# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: ) | |
| ) | |
| BARRY BRAUTMAN and ) | Bankruptcy Case No. 17-20400 |
| SUZANNE BRAUTMAN ) | |
| ) | |
| Debtor. ) | |

| | |
|---|---|
| TRIBAL PRODUCTS GROUP, LLC ) | |
| and FOXBARRY COMPANIES, LLC ) | |
| ) | |
| Plaintiffs. ) | |
| ) | |
| v. ) | Adversary Case No. _____ |
| ) | |
| BARRY BRAUTMAN ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
## AND REQUEST TO DETERMINE AMOUNT OF DEBTS

Creditors Tribal Products Group, LLC and Foxbarry Companies, LLC, pursuant to 11 U.S.C. § 523(a)(2) and 523(a)(6), and Rule 7001 of the Bankruptcy Rules, for their causes of action against Barry Brautman, state as follows:

1. On March 14, 2017 (the "Petition Date"), Debtors Barry Brautman and Suzanne Brautman filed a voluntary petition under Chapter 7 of Bankruptcy Code.

2. This proceeding is brought pursuant to Rule 7001(6) of the Bankruptcy Rules.

3. This is a core proceeding instituted by Plaintiffs Tribal Products Group, LLC and Foxbarry Companies, LLC objecting to discharge of Barry Brautman on certain obligations owed to Tribal Products Group, LLC and Foxbarry Companies, LLC and is governed by 11 U.S.C. § 523(a)(2) and 523(a)(6) and 28 U.S.C. § 157(b)((I) and (J).

4. The first date scheduled for the meeting of creditors herein was April 13,

2017.  The meeting of creditors has not yet occurred, but was rescheduled by reason of the failure of Debtors to file schedules at any time prior to the first date scheduled for the meeting of creditors.

5. On May 16, 2017, the Court entered its Order of Dismissal (Dkt. #36), by reason of Debtor's failure to comply with the Court's previous Orders and failure to file documents required pursuant to 11 U.S.C. § 521.

6. On May 26, 2017, Debtors filed their Motion to Vacate Order Dismissing Case and to Reinstate Bankruptcy Case (Dkt. #39), and served Notice of Opportunity for Nonevidentiary Hearing that the deadline for objections to the Motion to Vacate Order Dismissing Case and to Reinstate the Bankruptcy Case is June 26, 2017.

7. This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1334. This Matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(I) and (J).  Venue hereof in this district is proper pursuant to 28 U.S.C. § 1409.

8. Plaintiff Foxbarry Companies, LLC is a limited liability formed in and under the laws of the State of Nevada having its business address in Mission, Kansas.

9. Plaintiff Tribal Products Group, LLC ("Tribal") is a limited liability formed in and under the laws of the State of Nevada on or about April 4, 2013.  Its principal place of business at 3500 W. 75th St., Suite 200, Prairie Village, Kansas 66208.  At times relevant herein, Tribal was engaged in the business of selling cigarettes to native American businesses.

10. From April 13, 2013 to July 30, 2014, Tribal's members were Barry Brautman and two individuals other than Mr. Brautman.  From and after July 30, 2014, Foxbarry Companies, LLC has been and is the sole member of Tribal Products Group, LLC.

11. From April, 2013 to August, 2015, Tribal was managed by Barry Brautman

-2-

through Foxbarry Financial Services, LLC, a Kansas limited liability company controlled by Barry Brautman. From July 30, 2014 to August, 2015, Foxbarry Companies, LLC was managed by Barry Brautman through Foxbarry Financial Services, LLC, a Kansas limited liability company controlled by Barry Brautman.

12. At times relevant herein, Defendant Barry Brautman owned and was the manager of Foxbarry Financial Services, LLC. Foxbarry Financial Services, LLC is a limited liability company formed in and under the laws of the State of Kansas with its principal place of business at the residence address of Barry Brautman, 9644 Meadow Lane, Leawood, Kansas 66206.

13. Foxbarry Financial Services, LLC was engaged as Management Consultant of Tribal Products Group, LLC from on or about April 12, 2013 to July 30, 2014, and as Management Consultant of Foxbarry Companies, LLC from July 30, 2014 until August, 2015.

14. From April, 2013 until August, 2015, Barry Brautman and his company, Foxbarry Financial Services, LLC, were in exclusive control of the inventory and accounts and books and records of Tribal Products Group, LLC and from July 30, 2014 to until August, 2015, Barry Brautman and his company, Foxbarry Financial Services, LLC, were in exclusive control of the accounts and books and records of Foxbarry Companies, LLC.

15. Effective April 12, 2013, Barry Brautman owned 50% of the membership interests in Tribal Products Group, LLC, and the remaining interests were purchased by two other individuals.

16. Pursuant to the Operating Agreement of Tribal Products Group, LLC dated April 12, 2013, Tribal engaged Foxbarry Financial Services, LLC, a company owned and controlled by Barry Brautman, to act as Management Consultant. Pursuant to the Operating Agreement, Tribal

-3-

was to pay Foxbarry Financial Services, Inc. a management fee of $12,500 per month for the first three months beginning April 12, 2013, and thereafter to pay a Base Management Fee equal to the lesser of $12,500 per month or Tribal's net profit for each month, after taking into account all of Tribal's expenses including interest on borrowing. If Tribal had net profit for any month in excess of the Base Management Fee, then Tribal was to pay an Additional Management Fee equal to the lesser of $12,500 per month or 50% of Tribal's net profits in excess of the Base Management Fee. Such payments were to be made following issuance of Tribal's monthly financial statement setting forth Tribal's net profit for each month.

17. The Operating Agreement of Tribal Products Group, LLC dated April 12, 2013, provided for Managers to be entitled to receive from Tribal reimbursement of reasonable out of pocket expenses expended by the Manager in the performance of its duties.

18. In Barry Brautman's capacity as manager of Foxbarry Financial Services, LLC, from April, 2013 to August, 2015, Barry Brautman controlled the financial dealings and transactions of Tribal Products Group, LLC and the preparation of Tribal's financial statements. In Barry Brautman's capacity as manager of Foxbarry Financial Services, LLC, from July 30, 2014 to August, 2015 Barry Brautman controlled the financial dealings and transactions of Foxbarry Companies, LLC and the preparation of Foxbarry Companies, LLC's financial statements.

19. Barry Brautman controlled the payment of management fees by Tribal to Foxbarry Financial Services, LLC through August, 2014, by Tribal directly to Barry Brautman in September, 2014, and by Foxbarry Companies, LLC to Barry Brautman from October, 2014 through July, 2015.

20. Barry Brautman, acting as manager of Foxbarry Financial Services, LLC,

caused Tribal Products Group, LLC and Foxbarry Companies, LLC to make payments of fees to Foxbarry Financial Services, LLC and/or Barry Brautman which were not authorized and in excess of any amount authorized.

21. From September, 2013 to July, 2015, Barry Brautman caused Tribal Products Group, LLC and Foxbarry Companies, LLC to pay American Express statements of Foxbarry Financial Services, LLC which contained many expenditures for goods and services that benefitted Barry Brautman or his family personally but which were without business purpose benefitting Tribal Products Group, LLC or Foxbarry Companies, LLC.

22. From September 10, 2013 through January 9, 2015 Barry Brautman caused the transfer of $499,567.92 of funds belonging to Tribal Products Group, LLC to pay American Express charges of his company, Foxbarry Financial Services, LLC, of which total more than $114,000 was without business purpose to benefit Tribal Products Group, LLC; and from February 10, 2015 through April 10, 2015 Barry Brautman caused the transfer of $132,686.82 of funds belonging to Foxbarry Companies, LLC to pay American Express charges of Mr. Brautman's company, Foxbarry Financial Services, LLC, of which total at least $39,000 was without business purpose to benefit Foxbarry Companies, LLC.

23. In July, 2014, the April 12, 2013 Operating Agreement of Tribal Products Group, LLC was superseded. Tribal Products Group, LLC became a subsidiary limited liability company of Foxbarry Companies, LLC, and six other affiliated subsidiary limited liability companies were created, all wholly owned by Foxbarry Companies, LLC. Effective July 30, 2014, Foxbarry Financial Services, LLC became the owner of 50% of the membership interests in Foxbarry Companies, LLC, and the remaining interests were owned by two individuals other than

Barry Brautman. Barry Brautman was one of three Initial Managers of Foxbarry Companies, LLC.

24. The Operating Agreement of Foxbarry Companies, LLC dated July 30, 2014, provides for Foxbarry Companies, LLC to engage Barry Brautman's company, Foxbarry Financial Services, LLC as Management Consultant to provide general and management services beginning July 30, 2014, and to pay Foxbarry Financial Services, LLC $12,500 per month.

25. Barry Brautman and Foxbarry Financial Services, LLC caused payment of management fees from funds of Tribal between July 31, 2013 and July 30, 2014 in months when there was no net profit, and substantially in excess of agreed amounts. For example, although there was no net income in August, 2013, Brautman and Foxbarry Financial Services, LLC caused transfer on or about September 5, 2013 of $25,000 to Foxbarry Financial Services, LLC for management fees that were not earned; and from February, 2014 through July, 2014 Brautman and Foxbarry Financial Services, LLC caused transfer of at least $105,050 to Brautman and Foxbarry Financial Services, LLC, including $37,750 in February and March, 2014 and $67,300 from April through July, 2014 despite Tribal experiencing net income after interest expense and before consulting fees reported to be approximately $15,000 in February and March, 2014 combined, and experiencing net losses from April through July, 2014.

26. Profit and Loss statements produced by Barry Brautman failed to disclose the amounts of transfers of funds to American Express as expenses. Deduction of such expenses in Tribal's Profit and Loss calculations in each month from August, 2013 through June, 2014 reveals that Tribal had negative net income in August, October, and November, 2013 and all months from January through June, 2014, such that no management fees were due in the next succeeding months. When the amounts paid to American Express are deducted from Tribal's profit and loss figures for

-6-

September and December, 2013, the management fee in October, 2013 would have been less than $8,000 and the management fee in January, 2014 would have been less than $7,000. However, Barry Brautman caused Tribal to make payment of fees to Foxbarry Financial Services, LLC or directly to Mr. Brautman totaling approximately $186,950 from September, 2013 through July, 2014, an amount that was more than $171,950 in excess of amounts due.

27. In August, 2014, Barry Brautman caused $31,500 of Tribal's funds to be paid to Foxbarry Financial Services, LLC, another $19,000 more than provided for in the July 30, 2014 Operating Agreement.

28. Financial statements given to Plaintiffs by Defendants substantially understated the amounts of management fees taken by Defendants and the amounts of payments of the American Express credit card charges paid by Barry Brautman with Plaintiffs' funds.

29. In or about August, 2015, Brautman was terminated from his position as President of Tribal and Foxbarry Companies, LLC, and Foxbarry Financial Services, LLC was terminated as management consultant.

30. Plaintiffs did not discover the substantial overpayment of management fees caused by Brautman and Foxbarry Financial Services, LLC until after Plaintiffs obtained and analyzed Tribal and Foxbarry Companies, LLC's bank records in November, 2015 and discovered that amounts substantially in excess of agreed amounts and in excess of amounts represented on financial statements rendered by Barry Brautman had been paid to Foxbarry Financial Services, LLC and Barry Brautman for management fees.

31. Barry Brautman and Foxbarry Financial Services, LLC caused funds of Tribal and Foxbarry Companies, LLC to be used to make payment of American Express statements of

Foxbarry Financial Services, LLC without documenting that such charges were for expenses incurred in the performance of duties on behalf of Plaintiffs. Bank statements of Tribal and Foxbarry Companies, LLC obtained in the fall of 2015 disclosed that Barry Brautman and Foxbarry Financial Services, LLC caused $499,567.92 in American Express charges to be paid from funds of Tribal from September 10, 2013 through January 9, 2015, and caused an additional $178,113.81 in Foxbarry Financial Services, LLC's American Express charges to be paid from funds of Foxbarry Companies, LLC from February 10, 2015 through July 8, 2015.

        32.     American Express statements obtained from American Express Company by subpoena and received on August 18, 2016 disclosed that funds of Tribal and Foxbarry Companies, LLC were used to pay for more than $150,000 of personal and family expenses of Barry Brautman, including but not limited to extravagant dinners, thousands of dollars for jewelry, furniture and computer equipment, bicycle and fitness charges, as well as charges for golf equipment and golf outings, tickets for sporting events and concerts, mobile phone and itune charges, dental and orthodontic services, Sirius XM charges, lawn care, and travel for Barry Brautman's wife and children including airfare for a spring break trip by Suzanne Brautman, Ashley Brautman and Abigail Brautman to Cancun, Mexico in 2014.

        33.     Barry Brautman's actions in causing amounts to be paid from funds of Tribal and Foxbarry Companies, LLC in excess of agreed management fee amounts and to be paid to American Express for charges which were not incurred on behalf of or properly charged to Tribal or Foxbarry Companies, LLC, were not actions taken by Barry Brautman in good faith or reasonably believed by Barry Brautman to be in or not opposed to the best interests of Plaintiffs. Such actions constituted misconduct and a material breach of obligations owed by Barry Brautman to Plaintiffs.

34. The large amounts of excess management fees and American Express charges Barry Brautman caused to be paid from funds of Tribal caused Tribal to be unable to continue business operations and fail.

35. Barry Brautman and Foxbarry Financial Services, LLC either inaccurately reported sales revenues of Tribal to Plaintiffs in periodic financial statements, or Brautman and Foxbarry Financial Services, LLC caused substantial amounts of revenues from sales of Tribal's inventory of cigarettes not to be placed in Tribal's bank account or otherwise accounted for. Specifically, profit and loss statements for Tribal for the period from May, 2013 through December, 2013 reported sales revenue of $2,741,529.75 but bank account statements for the same period reflect deposits of approximately $2,173,982.75 and Defendants have not accounted for the approximately $568,000 in sales proceeds not deposited in Tribal's account in 2013; and for the period from January, 2014 through August, 2014, Tribal's profit and lost statements reported sales revenue of $3,270,880.24 but bank account statements for the same period reflect deposits of approximately $419,762 (apart from $50,000 borrowed by Tribal in August, 2014), and Defendants have not accounted for the approximately $2,851,000 in sales proceeds not deposited in Tribal's account in 2014.

36. Barry Brautman and Foxbarry Financial Services, LLC provided financial statements to Plaintiffs that did not accurately report Tribal's actual cigarette inventory amounts. Tribal's cigarette purchases ended on January 27, 2014 and the last deposit for cigarette sales occurred on September 3, 2014. A balance sheet for Tribal as of January 31, 2015 reported cigarette inventory of $831,264.75 and half case inventory of $92,638.38 and a prepaid inventory receivable of $55,175.50. However, Plaintiffs obtained a physical count of Tribal's inventory from the

warehouse dated April 28, 2015 that did not show over $920,000 in cigarette inventory, but showed only 70 cases having an estimated value of $65,370. Barry Brautman has never accounted for the more than $900,000 in lost cigarette inventory.

37. Barry Brautman's actions as set forth herein, including taking excess and unearned management fees from Plaintiffs, paying credit card charges unrelated to and not shown to be related to duties performed on behalf of Plaintiffs', loss and failure to account for Tribal's cigarette inventory, failure to account for Tribal's revenues and failure to provide accurate and timely financial reporting, constitute misconduct and a material breach of obligations owed to Plaintiffs by Barry Brautman and such conduct was not in good faith and was not reasonably believed by Mr. Brautman to be in or not opposed to the best interests of Plaintiffs.

38. As a direct result of the foregoing, Plaintiffs have been damaged.

## COUNT I: 11 U.S.C. § 523(A)(2)
## FALSE PRETENSES, FALSE REPRESENTATION AND ACTUAL FRAUD

39. Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 38.

40. Barry Brautman's conduct in causing payment of funds of Tribal and Foxbarry Companies, LLC to Barry Brautman and to Foxbarry Financial Services, LLC well in excess of any amounts of management fees earned and by causing use of funds of Tribal and Foxbarrry Companies to pay American Express charges of Foxbarry Financial Services, LLC incurred for the personal use and benefit of Barry Brautman and his family, caused the misapplication, misappropriation, misdirection and diversion of funds of Tribal and Foxbarry Companies, LLC for Barry Brautman's own use and benefit.

41. Barry Brautman knew that diverting the funds of Tribal and Foxbarry

Companies, LLC to pay unearned management fees and to pay American Express charges of Foxbarry Financial Services, LLC without business purpose beneficial to Tribal or Foxbarry Companies, LLC was not authorized and would cause damage to Plaintiffs. Barry Brautman concealed the diversion of funds by failing to provide accurate disclosures of amounts of the management fees and payment of American Express charges in financial statements.

42. Barry Brautman's conduct in obtaining funds of Plaintiffs for unearned management fees and personal credit card expenditures constituted the obtaining of funds by false pretenses, false representation and/or actual fraud.

43. As a direct result of the foregoing conduct of Barry Brautman, Plaintiffs have been damaged.

WHEREFORE, Tribal Products Group, LLC and Foxbarry Companies, LLC respectfully request the Court to find that Barry Brautman obtained funds of Plaintiffs by false pretense, false representation and/or actual fraud, and that the resulting debt is nondischargeable pursuant to 11 U.S.C. § 532(a)(2), and grant such other and further relief as the Court deems just and equitable.

### COUNT II: 11 U.S.C. § 523(A)(6)
### WILLFUL AND MALICIOUS INTENT TO INJURE THE PLAINTIFF

44. Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 43.

45. Barry Brautman knew that diverting the funds of Tribal and Foxbarry Companies, LLC to pay unearned management fees and to pay American Express charges of Foxbarry Financial Services, LLC without business purpose beneficial to Tribal or Foxbarry Companies, LLC was not authorized and would cause damage to Plaintiffs.

-11-

46. Barry Brautman knowingly, intentionally, wrongfully and without justification or excuse, misapplied, misappropriated, misdirected and diverted funds of Tribal and Foxbarry Companies, Inc. for payment to Barry Brautman or Foxbarry Financial Services, LLC of unearned fees and American Express charges for goods and services that did not benefit Tribal or Foxbarry Companies, Inc.

47. Barry Brautman knowingly, intentionally, deliberately and wrongfully injured Tribal and Foxbarry Companies, LLC by misapplying, misappropriating, misdirecting and diverting funds of Tribal and Foxbarry Companies, Inc. for his benefit and enjoyment.

48. Barry Brautman's actions were willful, intentional and malicious.

WHEREFORE, the Plaintiffs respectfully request the Court to find that Barry Brautman willfully and maliciously acted to injure Plaintiffs and that the resulting debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(6), and grant such other and further relief as the Court deems just and proper.

## COUNT III: 11 U.S.C.§§ 105 and 502
### REQUEST FOR JUDICIAL DETERMINATION OF AMOUNT OWED

49. Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 48.

50. The debts owed by Barry Brautman to Tribal and Foxbarry Companies, LLC arise from false pretenses, misrepresentation, fraud and intentional wrongs as alleged herein and are nondischargeable under 11 U.S.C. § 523.

51. This Court has jurisdiction to determine the amount of the debts owed by Barry Brautman to Tribal and Foxbarry Companies, LLC and render a money judgment in such amounts.

WHEREFORE, the Plaintiffs respectfully request the Court to determine the amount of the nondischargeable debts owed by Barry Brautman to each of the Plaintiffs and render judgment in such amounts in favor of Plaintiffs pursuant to 11 U.S.C.§§ 105 and 502 and grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

McDOWELL, RICE, SMITH & BUCHANAN
A Professional Corporation

By: s/ Donald G. Scott
Donald G. Scott, KS #25706, KS Fed. #70066
605 West 47th Street, Suite 350
Kansas City, MO 64112-1905
dscott@mcdowellrice.com
Telephone: (816) 753-5400
Facsimile: (816) 753-9996
dscott@mcdowellrice.com

ATTORNEYS FOR TRIBAL PRODUCTS GROUP, LLC AND FOXBARRY COMPANIES, LLC